**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

ANNETTE ANDERSON PLAINTIFF

vs. Civil Action No. 3:09-cv-525 HTW-LRA

NISSAN NORTH AMERICA, INC. DEFENDANT

**ORDER GRANTING SUMMARY JUDGMENT**

Before this court is Nissan North America's ("Nissan") Motion for Summary Judgment. Pursuant to Rule 56,[1] Federal Rules of Civil Procedure, Nissan moves the court to enter summary judgment in its favor on the grounds that plaintiff, Annette Anderson ("Anderson") cannot adduce any evidence from which a reasonable juror could conclude that she was subject to disparate treatment on the basis of her sex in violation of Title VII, codified in Title 42 U.S.C. §2000e-2, *et seq*.,[2] when Nissan terminated her employment for excessive absenteeism. The male comparator identified by Anderson, says Nissan, is not similarly situated to Anderson for purposes of Title VII because his corrective action history concerning attendance issues, and individual

---

[1] Fed.R.Civ.P. 56(a) states:
A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

[2] Title 42 U.S.C. § 2000e *et seq*., prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin.

attendance history, was materially different from that of Anderson. Moreover, adds Nissan, nine of the ten employees discharged for attendance infractions during the relevant time period were male. Accordingly, says Nissan, summary judgment should be granted to it concerning Anderson's sex discrimination claim.

Anderson's claim for interference with protected rights under the Family and Medical Leave Act of 1993 ("FMLA"), Title 29 U.S.C. 2601 *et. seq.*,[3] also should be dismissed, argues Nissan, because Anderson's termination under Nissan's Attendance Corrective Action Guidelines was based on non-FMLA protected occurrences, and without regard to any alleged FMLA-protected tardiness or absence.

Finally, concludes Nissan, Anderson's allegations of intentional infliction of emotional distress, based on the same allegations which support her alleged claims of discrimination and FMLA interference, fall far short of the heightened burden of proof required to maintain such a claim under Mississippi law.[4]

Plaintiff Annette Anderson opposes Nissan's motion. She contends that she has presented sufficient evidence for this court to deny defendant's motion and schedule this dispute for a jury trial.

In her response to Nissan's motion for summary judgment, plaintiff Annette Anderson has withdrawn her claim under Title VII (Count I) and has failed to make any

---

[3] "The Family Medical Leave Act of 1993 was enacted to permit employees to take reasonable leave for medical reasons, for birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition.FN6 The Act seeks to meet the needs of families in a manner that accommodates the legitimate interests of employers." *Bocalbos v. National Western Life Ins. Co.*, 162 F.3d 379, 382 (5th Cir. 1998).

[4] As prescribed by *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), this court applies the substantive law of the State of Mississippi to this claim.

response whatsoever concerning Nissan's motion for summary judgment as to her intentional infliction of emotional distress claim (Count III) under state law. Plaintiff's brief in response to defendant's motions for summary judgment, docket no. 26. Both of these claims are dismissed with prejudice.

Relative to plaintiff's remaining FMLA claims, then, this court agrees with Nissan's stance on the law as applied to the undisputed material facts. Accordingly, this court grants summary judgment to Nissan for the reasons which follow.

The defendant has also filed a motion to strike [docket no. 30], which this court finds moot.

Because plaintiff has pled violation of a federal statute, this court has federal question subject matter jurisdiction, under Title 28 U.S.C. § 1331,[5] over the claims founded in federal statutes, and supplemental jurisdiction, under Title 28 U.S.C. § 1367(a),[6] over the state law claims which arise from the same set of facts and circumstances.

## I. Background

Anderson became employed by Nissan as a production technician in Nissan's Trim & Chassis Plant at the company's Canton, Mississippi, facility on or about June 23,

---

[5] Title 28 U.S.C. § 1331 states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[6] Title 28 U.S.C. § 1367(a) states in pertinent part:
Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2003. *See* Deposition of Annette Anderson, Exhibit A to Motion (hereinafter "Anderson Depo.") at 19-21. At the time Anderson became employed, she received a copy of the Nissan North America, Inc., Employee Handbook ("Handbook"). Anderson Depo., Exs. 1 and 2. Anderson also acknowledged that she was an at-will employee of Nissan, and that her at-will Nissan employment was subject to "such rules, regulations, personnel practices and policies, and changes therein as [Nissan] may from time to time adopt ... ." Anderson Depo., Ex. 3.

In 2005, Nissan supplemented the "Attendance Policy" in its Handbook (Anderson Depo., Ex. 2) with its "Attendance Policy Corrective Action Guidelines," which set forth corrective action guidelines for both unexcused and excused (but unpaid and unprotected) absences. Anderson Depo., Ex. 4 (hereinafter "Corrective Action Guidelines"). Anderson admits that she received and was aware of the Corrective Action Guidelines from the time of their issuance. Anderson Depo. at 21.

The Corrective Action Guidelines, together with the corrective action provisions of the Handbook (Handbook, Exhibit 2 to Anderson Depo. at 24-27), enact a progressive counseling and discipline system designed to give employees early notice of attendance issues and ample opportunity to correct their behavior before losing their job. Affidavit of Jay Kerr, Exhibit B to Motion at ¶ 5 (hereinafter "Kerr Aff."). As set forth in the Corrective Action Guidelines, the following corrective action steps are normally utilized in series by Nissan to give employees full and fair notice of developing attendance problems and a corresponding opportunity to correct their behavior: (1) Counseling; (2) Verbal Reminder; (3) Written Reminder; (4) Final Written Reminder; and

(5) Termination of Employment. Anderson Depo., Ex. 4; Kerr Aff. at 6.

Under Nissan's policies, excessive absences, unapproved absences and other violations of the attendance policy can result in corrective action.[7] Anderson Depo., Ex. 4; Kerr Aff. at 8. An employee will receive "points" when an absence is unexcused or when an absence is excused, but unpaid and unprotected.[8] *Id.* Nissan employees accrue "paid time off" or "PTO" hours each month. Employees can use their accrued PTO if they are ill or if they have personal business that cannot be handled outside of the work day. Kerr Aff. at 9. If an employee has sufficient PTO to cover an absence, he will receive no points, even if the absence is not otherwise protected. *Id.* Nissan employees can earn vacation time based on their length of service to the company. Kerr Aff. at 10. However, unlike with PTO, an employee cannot cover an unplanned absence with vacation time; he will receive points for the unplanned absence even if he has vacation time available. *Id.* Put another way, an employee may not retroactively apply vacation time to an absence that Nissan's management did not schedule, at least 24 hours prior to the absence as the employee's vacation time. *Id.* Without management's pre-approval, the absence will result in the employee accumulating

---

[7] Under the system, employees are assigned "points" for various occurrences or excused (but unpaid and unprotected) absences. The assignment of points is done on a no-fault" basis. This means that the reason for the absence or tardiness is irrelevant under the Corrective Action Guidelines unless it is a "paid" or "protected" absence as defined under the Corrective Action Guidelines. Kerr Aff. at 8; Anderson Depo., Ex. 4.

[8] "Paid" or "protected" absences under the Corrective Action Guidelines include: absences covered by an employee's accrued "paid time-off;" holidays; previously and properly approved vacation days; military or jury duty service; disability or bereavement leaves; leaves protected by the Family and Medical Leave Act; approved personal leaves; and approved parental or bonding leaves. No points are given for these absences. Kerr Aff. At 9; Anderson Depo., Ex. 4.

points for it under Corrective Action Guidelines. *Id.*

While the accumulation of "points" under the attendance system provides the company with benchmarks to gauge an employee's attendance standing at any given time, the progressive corrective action steps are key to employee discipline and discharge for attendance violations. The critical point is this: employment discharges for attendance violations at Nissan are determined based upon completion of the progressive corrective action steps, not by the level of points achieved under the attendance system. Kerr Aff. at 12. This is because the purpose of the corrective action guidelines is to give employees an opportunity to correct their behavior before serious discipline results. *Id.* Since Nissan's corrective action steps are progressive, situations can arise where the corrective action issued does not coincide with the point level for that corrective action step stated in the Correction Action Guidelines. Kerr Aff. at 11. For example, if an employee has an unexcused absence which brings his point total to 8 points, this would justify a Verbal Reminder under the Corrective Action Guidelines. *Id.* However, if, while management is preparing the Verbal Reminder, the employee is tardy twice again and raises his point total to 14 points (thereby justifying a Written Reminder under the Corrective Action Guidelines), Nissan will normally only issue the Verbal Reminder to the employee, even though at the time the Verbal Reminder is issued, the employee's point total has risen to a level which would justify a Written Reminder under the Corrective Action Guidelines. *Id.* The employee would not receive the next step in the corrective action progression until the next incurrence of points following the issuance of the Verbal Reminder. *Id.* Thus, because Nissan strives

to give employees notice of attendance problems and an opportunity to correct their behavior, it will not discharge an employee for attendance problems until the last stage in the corrective action progression prior to discharge (i.e., "Final Written Reminder") has occurred. *Id.* For this reason, occasions can arise when employees receive 20 or more points without being terminated. *Id.* Discharge depends upon whether, at the time the employee reaches 20 or more points, he has previously received a Final Written Reminder for attendance. *Id.* If so, the employee will be discharged at the time he receives 20 or more points. If not, the employee will be issued a Final Written Reminder for attendance, with termination to follow on the next incurrence of points under the Correction Action Guidelines. *Id.*

Anderson's disciplinary history for attendance problems from May 2007 through her employment termination in February 2008 is as follows:

1. On May 24, 2007, Anderson received a Verbal Reminder under the Attendance Corrective Action Guidelines because she had accumulated 9 attendance points. Anderson Depo. at 25-26 and Ex. 5.

2 Anderson received a Written Reminder for attendance issues on August 15, 2007. Anderson Depo. at 26-27 and Ex. 6. Anderson received this Written Reminder because she accumulated 2 additional points for missing 4 hours of work to take her child to the dentist on June 4, 2007, and 3 additional points for being tardy due to traffic on July 9, 2007, which, when coupled with the 9 points she already had, raised her point total to 14 points.[9] *Id.* This Written

[9] The following absences or tardies during this same time period were not counted against Anderson (and did not contribute to the issuance of her Written Reminder) so that Anderson would have the opportunity to submit FMLA paperwork for them: June 20 and 21 absence due to husband allegedly having surgery (4 points); July 16 doctor's appointment (2 points); and August 13 non-stop nosebleed (2 points). These occurrences were not counted against Anderson, but she still had enough points for the June 4, 2007, absence and July 9,

Reminder was presented to Anderson and advised her that future violation of the attendance policy would subject her to further corrective action up to and including termination of employment. Anderson Depo. at 26-27 and Ex. 6.

3. On February 13, 2008, Anderson was issued a Final Written Reminder for attendance because on January 10, 2008, she missed several hours of work when she went to the hospital with her husband, resulting in incurrence of an additional 4 points which brought her total points to 18 points, justifying a Final Written Reminder under the Corrective Action Guidelines. Anderson Depo. at 26-27 and Ex. 7. This Final Written Reminder was given to and discussed with Ms. Anderson by her Section Manager, John Smith. Anderson Depo. at 26-27. The Final Written Reminder states in part: "this Final Written Reminder is your last chance to correct your unacceptable attendance. It is the third step of the four step correction action process. This step is sometimes called the decision-making stage. You are encouraged to continue working with the understanding that you must correct your problem." Anderson Depo. at Ex. 7.

As of February 13, 2008, Anderson was aware of the following: (1) she had at least 18 points under the attendance system; (2) she had been given a Final Written Reminder about her attendance problems by Nissan; and (3) that the next step for any subsequent attendance issue resulting in points under the attendance system would be termination of employment. Anderson Depo. At 26-27, Ex. 7.[10]

On February 20, 2008, Anderson was tardy because she overslept. Kerr Aff., ¶

2007, tardy to bring her point total to 14, thus justifying a Written Reminder under the Corrective Action Guidelines.

[10] Significantly, Anderson had two other attendance occurrences between her August 2007 Written Reminder and her February 13, 2008, Final Written Reminder. They were: (1) a tardy on January 22, 2008 (3 points); and (2) a tardy on February 1, 2008, due to Anderson's having her leased vehicle serviced (3 points). While these could have been considered and included by Nissan in arriving at Anderson's February 13, 2008, Final Written Reminder, they were not considered by the company in connection with the Final Written Reminder. Anderson Depo., Ex. 7.

14, Ex. 2; *see also* Summary of Corrective Action Appeal for Peer Review, Exhibit C. Anderson requested vacation time for this tardiness, but this request was denied because her vacation request was not made and scheduled at least 24 hours in advance as required by Nissan policy. This tardy resulted in Anderson's incurrence of an additional 3 points under the attendance system, bringing the number of points having been counted by Nissan in arriving at Anderson's attendance-related corrective action to 21 points.

On February 27, 2008, Anderson's Department Manager, Norris Poynter, recommended that Anderson be discharged for unacceptable attendance. *See* Kerr Aff., ¶¶ 13, 15 and Ex. 1. Poynter's recommendation that Anderson be discharged was subsequently approved by the company. Kerr Aff., ¶¶ 13, 16 and Ex. 1.

On February 28, 2008, Anderson was advised that her employment was being terminated because of unacceptable attendance. Kerr. Aff., ¶ 16.

Anderson's complaint asserts a claim for "Direct Violation of the Requirements of FMLA." Specifically, her complaint alleges:

> 10. In December of 2007, Plaintiff applied for FMLA leave in order to have breast surgery.
>
> 11. While out on FMLA leave, Plaintiff was disciplined for her absences and received points against her attendance, which she did not deserve.

Complaint, ¶¶ 10, 11. Anderson's response to Nissan's interrogatory about her FMLA claims states: "... Defendant improperly terminated plaintiff instead of allowing plaintiff to take FMLA leave." *See* Anderson's response to Nissan's Interrogatory No. 7, attached

as Exhibit D to Motion.[11]

To prevail on an FMLA interference claim, Anderson must show: (1) that she was eligible for the FMLA's protections; (2) that Nissan was covered by the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she provided sufficient notice of her intent to take leave; and (5) that Nissan denied her FMLA leave to which she was entitled. *De La Rama v. Illinois Dept. of Human Services*, 542 F.3d 681, 686-87 (7th cir. 2008); *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th cir. 2008) (FMLA "interference" claim requires proof of right to take FMLA leave). Anderson must also establish that she suffered employment-related loss "by reason of the [FMLA] violation" or actual monetary loss "as a direct result of the violation." *See* Title 29 U.S.C. § 2617(a)(1)(A)(i)(I); Title 29 U.S.C. § 2615.

[11] Anderson's complaint cannot be read as asserting a claim for retaliatory discharge under FMLA. To assert an FMLA retaliation claim, Anderson must first plead, and then prove, the following elements: (1) that she was protected under the FMLA; (2) that she suffered an adverse employment decision; (3a) that she was treated less favorably than an employee who had not requested leave under FMLA; or (3b) the adverse decision was made because she took FMLA leave. *See Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). If a *prima facie* case is established, the burden shifts to Nissan to establish a legitimate, non-retaliatory reason for Anderson's termination. *Hunt v. Rapides Health Care System, LLC,* 277 F.3d 756, 768-69 (5th Cir. 2001). If Nissan makes this showing, Anderson must then demonstrate a triable issue of fact concerning whether Nissan's articulated reason is a pretext for retaliation. *Hunt*, 277 F.3d at 768.

Anderson's complaint does not plead any of these elements. Accordingly, her complaint fails to state a claim upon which relief can be granted for FMLA retaliation pursuant to Rule 12(b)(6), FRCP, and any such purported claim, even if asserted, is subject to dismissal for this reason alone. *See Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007) (complaint must assert factual allegations sufficient to "raise a right to relief above the speculative level"). *See also Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (complaint offering only "labels and conclusions" and "naked assertions" is insufficient). Anderson has therefor wholly failed to properly or effectively plead a claim for retaliatory discharge under FMLA, and to the extent she purports to assert such a claim, it should be dismissed. Regardless, Anderson has no proof that her discharge for violation of Nissan's Attendance Policy and Corrective Action Guidelines is a pretext for FMLA retaliation.

## II. Summary Judgment

### A. Legal Standard

The court should grant a motion for summary judgment only if "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). A fact is material if "it might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To determine whether there is a genuine dispute as to any material fact, the court must consider "all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *Turner,* 476 F.3d at 343 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). The court must make all reasonable inferences in favor of the non-moving party, *Reeves*, 530 U.S. at 150; "however, a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

### B. Analysis

Anderson's interference claim in this case is premised upon alleged wrongful denial of requested FMLA leave in connection with or following her December 2007 leave request to have breast surgery. *See* Complaint, ¶¶ 10-11.

On or after December 5, 2007, plaintiff requested and was granted FMLA leave

associated with breast surgery which occurred on November 29, 2007. Anderson submitted, and Nissan accepted, as medical certification for that leave, a certification form signed by her physician Dr. Dev. A. ManiSunDaram. Anderson Depo. At 27-30 and Ex. 8. This medical certification asserted plaintiff's need for leave for a "condition lasting more than 3 days." *Id.* The boxes for "chronic condition" and "permanent or long-term care requiring supervision" were not checked by the physician. The physician noted the duration of the condition as four (4) days. *Id.* At the time the physician completed and signed the medical certification form on December 5, 2007 (Anderson Depo., Ex. 8), the physician represented to Nissan that Anderson was currently able to work full duty. *Id.*

Although Anderson's complaint accuses Nissan of denying her medical leave in connection with the aforementioned breast surgery of November, 2007, the factual record before the court does not support her contention. The record instead establishes that no absence occurring in either November or December 2007 was ever counted against Anderson, or included in any computation of disciplinary action against Anderson. *See* Anderson Depo., Ex. 7 (Final Written Reminder); Kerr Aff., Ex. 1 (termination recommendation).[12] Thus, Anderson's contention that she was denied FMLA leave associated with her breast surgery lacks any evidentiary foundation.

Anderson's argument in her response to defendant's motion for summary judgment wanders far beyond the assertions in the four corners of her complaint. This response focuses upon an incident occurring in January, 2008, concerning Anderson's

---

[12] Anderson's Verbal and Written Reminders both predated November 2007. Anderson Depo., Exs. 5, 6.

husband. This incident was not raised in her complaint; it surfaced only in plaintiff's response to defendant's motion for summary judgment. This aspect, alone, is sufficient ground for this court to dismiss this claim; nevertheless, the court will provide an additional reason premised upon an analysis of FMLA jurisprudence.

As of late November, early December 2007 (the time at which she had her breast surgery), Anderson had already received a Verbal Reminder and a Written Reminder under Nissan's corrective action matrix for attendance infractions. Anderson Depo., Exs. 5 and 6. The next step in the process for subsequent infractions was the Final Written Reminder. Anderson received her Final Written Reminder on February 13, 2008, as a result of an absence from work on January 10, 2008. Anderson Depo., Ex. 7.

On January 10, 2008, Anderson was at work at Nissan when she received word that her husband had left his job that day as a Fed Ex truck driver to go to a hospital emergency room. Anderson Depo. at 30. When Anderson arrived at the hospital emergency room, she learned that her husband had not had a heart attack, as she had thought, but was suffering from anxiety. Anderson Depo. at 30-34. Anderson then took her husband home from the hospital emergency room shortly after lunch on January 10. *Id.* She reported back to work at Nissan on January 10 by 2:30 p.m. *Id.* She worked the rest of the day up to and through 5:30 p.m. at Nissan. She thereafter worked every other day following January 10 at Nissan on which she was scheduled to work up to and through the time of her discharge. Anderson Depo. at 34.

Anderson contends this absence should have been covered under FMLA.

Nissan disagrees, arguing that it was legally correct in its decision to count this absence against her. Nissan argues that the FMLA requires the employee to provide sufficient notice for the employer to determine if the absence is covered by the FMLA. *See Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998). This court agrees with Nissan.

Eligible employees, under the FMLA, are entitled to up to 12 work-weeks of leave during a 12-month period for various reasons, including a serious health condition suffered by the employee which prevents her from working or to provide care for a family member who has a serious health condition. *See Urban v. Dolgencorp of Texas, Inc.*, 393 F.3d 572, 574 (5th Cir. 2004); Title 29 U.S.C. § 2612(a)(1)(C).[13] Under the Act, it is illegal for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA. Title 29 U.S.C. § 2615(a)*;* *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 975 (5th Cir. 1998).

The FMLA requires the employee to provide notice to the employer, "sufficient to reasonably apprise [the employer] of the employee's request to take time off for a serious health condition." *See* Title 29 C.F.R. §§ 825.302-303 (2009); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995). The employee is not required specifically to invoke the FMLA. 66 F.3d at 762 (comparing the employee

[13] Title 29 U.S.C. § 2612(a)(1)(C) states:
(1) Entitlement to leave
Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:
. . .
(C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

notice requirements for unforeseeable FMLA leave to the requirements for foreseeable leave). And if the initial notification, be it verbal or written, is insufficient, "the employer will be expected to obtain any additional required information through informal means." Title 28 C.F.R. § 825.303 (2009). The employee, however, has the obligation to respond to the employer's inquiries and "the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." *Id*.

In response to the defendant's motion for summary judgment, plaintiff provided her own affidavit, dated July 15, 2010, stating that her husband had an ongoing anxiety condition. Anderson Aff., ¶9. Anderson clearly did not submit her affidavit to Nissan prior to her termination, thus, it could not have served to provide Nissan with notice of a "serious health condition" entitling her to protection by the FMLA.

Anderson also has provided two letters from Dr. Don Gibson, addressing her husband's emergency room visit on January 10, 2008. Plaintiff's response to motion for summary judgment, Ex. B. Plaintiff claims she submitted these letters to Nissan before her termination. The letters are dated February 5 and 11, 2008. Following are the contents of each letter:

February 5, 2008 letter:

> Mr. Anthony Carl Anderson is a patient whom I have followed for a number of years. He was seen on June 19, 2007 at the Magee General Hospital Emergency Room. Mr. Anderson was last seen in my office on June 28, 2007. During this visit, I strongly recommended him [sic] to take some time off, and to have someone to help him with day to day activities. It was understood that his wife would be the caretaker, and would be able to take off work during this time.

If you need additional information, please give my office a call.

February 11, 2008 letter:

Annette Anderson is a patient whom I have followed for a number of years. On January 10, 2008, she was notified at work that her husband Anthony Andersen had been transported to Central Mississippi Medical Center. According to the patient, she left work to be with her husband. (please see hospital documentation). This incident falls under a medical emergency, and I'm sure you will agree, that she did what any spouse would have done under the same circumstances.

If you need additional information, please give my office a call.

The final written reminder issued on February 13, 2008, by Nissan indicates the Human Resources department conducted an investigation into the January 10, 2008 incident. Plaintiff was familiar with the leave request procedure under the FMLA, having requested and received approval for leave when she had breast surgery in November of 2007. Even assuming, *arguendo*, that plaintiff did submit Dr. Gibson's letters to Nissan during the Human Resources investigation, they do not provide sufficient evidence to Nissan to find she or her husband suffered a "serious health condition" qualifying for FMLA protection.

A "serious health condition" as defined in the FMLA "means an illness, injury, impairment or physical or mental condition" requiring: (1) inpatient care resulting in an overnight stay in a hospital; (2) continuing treatment by a healthcare provider which, at a minimum, initially involved a period of incapacity of more than three consecutive calendar days; (3) a period of incapacity related to pregnancy or prenatal care; or (4) a period of incapacity due to a chronic serious health condition. *See* Title 29 C.F.R. § 825.114 (2007); Title 29 C.F.R. §§ 825.114 and 825.115 (2009); *Mauder v. Met. Transit*

*Auth.*, 446 F.3d 574, 579-580 (5th Cir. 2006). The evidence provided by plaintiff to date does not support a conclusion that her husband's emergency room visit qualifies under this definition.

The letters which Anderson claims to have provided to Nissan are from her husband's treating physician. They notably omit any mention of frequent or ongoing treatment for a chronic health condition, or any diagnosis at all for chronic anxiety. They state that Mr. Anderson had been admitted to an emergency room and plaintiff reasonably responded by leaving work to meet her husband there, that the doctor had counseled Mr. Anderson to take some time off, and that the doctor was under the impression that the plaintiff could take off from work to assist him. This information, in response to Nissan's investigation, is insufficient to allow Nissan to determine if the leave qualifies under the FMLA. The administrative regulations governing employee notice requirements under the FMLA explicitly state that "the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." Title 28 C.F.R. § 825.303 (2009). In computing this absence against plaintiff, Nissan did not violate any rights of Anderson under the FMLA

After receiving her Final Written Reminder on February 13, 2008, Anderson's employment discharge was precipitated by her next violation of the attendance policy when she was tardy for work on February 20, 2008. On this occasion, Anderson advised Nissan that on the night before February 20, 2008, she had had a disagreement with her husband and that she had taken medication to help her sleep and that it caused her to oversleep and be 20 minutes late for work. Kerr Aff., ¶ 10 and

Ex. 2. *See also* Summary of Corrective Action Appeal for Peer Review, Exhibit C. On February 20, 2008, Anderson asked Nissan if she could take a vacation day for February 20, but she was advised that vacation coverage could not be allowed since it was not requested and scheduled at least 24 hours in advance, pursuant to Company policy. Kerr Aff., ¶ 10 and Ex. 2.

Again, Anderson contends that Nissan violated her rights under the FMLA. Again, this court disagrees.

Tardiness due to oversleeping because of medication taken because of a disagreement with a spouse is not an FMLA-covered event. *See* Title 29 C.F.R. § 825.114 (2007) and Title 29 C.F.R. §§ 825.114 and 825.115 (effective January 16, 2009). Moreover, Anderson was not, as she must be for FMLA-protection, rendered unable by this event from performing the essential functions of her position at Nissan. *See* Title 29 C.F.R. § 825.112(4) (in order to qualify as a serious health condition covered by FMLA, employee's condition must render employee unable to perform functions of job). Anderson was 20 minutes late to work, but she thereafter came to work and worked on February 20, 2008, and again, worked every other scheduled day she was required to work up to and through the date of her discharge. Anderson Depo. at 34.

The February 20, 2008, tardiness which precipitated Anderson's discharge was therefore not covered by the FMLA. Nissan gave Anderson all of the FMLA leave which she properly and timely requested. Plaintiff failed to provide appropriate information to Nissan sufficient for it to determine if her January 2008 absence was protected by the

FMLA. No FMLA-covered event was counted against Anderson by the Company in arriving at her various corrective action reminders and termination.

## III. CONCLUSION

This court has reviewed the pleadings and record evidence to determine if any genuine dispute of material fact remains requiring the hearing of a jury. Plaintiff has conceded her Title VII claim and completely failed to support her claim of intentional infliction of emotional distress. As for her FMLA claims, as explained above, this court finds that they must be dismissed. This court grants defendant's motion for summary judgment [docket no. 20] and denies defendant's motion to strike [docket no. 30] as moot.

SO ORDERED, this, the 30th day of September, 2011.

**s/ HENRY T. WINGATE**
UNITED STATES DISTRICT COURT JUDGE

Civil Action No. 3:09-cv-525 HTW-LRA
Order Granting Summary Judgment